**The STATE of Ohio, Appellee,**

v.

**LUDT, Appellant.**

[Cite as *State v. Ludt,* 180 Ohio App.3d 672, 2009-Ohio-416.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 107.

Decided Jan. 27, 2009.

674

Carol Clemente Wagner, Struthers Prosecuting Attorney, and James P. Laczko, Assistant Prosecuting Attorney, for appellee.

Thomas M. McNerney, for appellant.

WAITE, Judge.

{¶ 1} Appellant, James Ludt, is appealing his conviction in a bench trial on two counts of aggravated menacing. The convictions arose from an incident at appellant's home during which he wielded a gun and verbally threatened two men who were trying to repossess his car. Appellant argues that he was denied due process because the trial judge filed the guilty verdict, but five minutes later recused himself from sentencing appellant. Appellant argues that the judge should have recused himself before returning a verdict if he had a conflict that would require his recusal from any further participation in the case. Although we have no jurisdiction to resolve whether or not a judge should recuse himself or herself, we do have the authority to review due-process errors. Whatever the reason for the trial judge's recusal, it is evident from the record that the recusal took place almost simultaneously with the filing of the guilty verdict, giving rise to an appearance of basic unfairness in how the verdict was rendered. The record supports appellant's arguments, and the conviction is reversed and the case remanded for further proceedings.

## FACTS

{¶ 2} On January 26, 2006, appellant and Shauna Pupin were in their home on East Midlothian in Struthers. Two repossession agents, Charles Butch and James Huff, arrived at the house to repossess an automobile. They knocked on the door for approximately 30 minutes, and eventually Pupin answered the door. Appellant was upstairs at the time. The men identified themselves to Pupin and told her why they were there. During the conversation, Pupin began screaming.

Appellant then arrived at the door carrying a gun. Appellant told the men to get off the property or he would shoot them. He told the men that the gun had hollow-point ammunition and that he was not afraid to use the gun. The men returned to their car and called the Struthers Police Department. Before the police arrived, appellant left the house and drove off in the vehicle that the men were attempting to repossess. The two men followed him for a short distance, but then returned to appellant's address to wait for the police.

{¶ 3} On February 3, 2006, the two men filed separate complaints in Struthers Municipal Court, alleging aggravated menacing, R.C. 2903.21, a first-degree misdemeanor.

{¶ 4} A bench trial was held on September 27, 2006. The two repossession agents testified, along with Struthers Police Detective Jeff Pantall, Ms. Pupin, and appellant himself. At the end of the trial, the court took the matter under advisement. No judgment entry was filed at that time.

{¶ 5} On February 23, 2007, the court held a status hearing. The judge orally advised appellant that he had been found guilty and then alluded to a recent incident in which appellant had displayed signs that according to the trial judge, "dared me to put you in jail today." The trial judge stated: "We read your signs. They're really—you made me a celebrity with those signs. Anyway, we don't do that. We're going to do a PSI, Counsel, presentence investigation. We're going to see what that comes up with. He's going to be treated like any other gentleman in this court." The court then scheduled a sentencing hearing for April 16, 2007. Once again, however, no judgment entry was filed.

{¶ 6} The record contains another transcript from February 23, 2007, of a conversation that the trial judge had with appellant relating to three cases pending before the court involving Joseph Pupin. The exact nature of these cases is not clear from the transcript, but it appears that three vehicles were impounded as a result of these cases, and appellant's conversation with the trial judge was an attempt to find out what had happened to these cars. The transcript is very broken and incomplete, but it does indicate that appellant believed he had some ownership interest in one or more of the cars and that one or more of them had been destroyed by mistake. The record indicates that the trial judge had received independent or ex parte information about the vehicles and that he recused himself from the three cases because of the possibility that he might be called to testify as a witness in the cases.

{¶ 7} The judgment entry of conviction in appellant's case was finally filed on April 9, 2007. The court noted the exact time of the filing of the judgment entry, which was 9:05 a.m. The court filed another judgment entry five minutes later, at 9:10 a.m., stating, "I hereby recuse myself from the instant case and or any

companion cases." The judge had not sentenced appellant at the time of this filing.

{¶ 8} A new judge was appointed to the case, and sentencing was set for May 22, 2007. Appellant filed a motion for a new trial, which was overruled. On May 22, 2007, he was sentenced to 180 days in jail on each count, to run concurrently. The sentence was stayed pending appeal. This appeal was filed on June 20, 2007.

{¶ 9} Appellant's counsel filed a motion to withdraw as counsel immediately prior to oral argument in this appeal due to a possible conflict of interest that had recently developed. We hereby sustain counsel's motion to withdraw, but this does not prevent us from issuing our opinion in this matter in appellant's favor, as will be explained below.

{¶ 10} Appellant presents three assignments of error, which will be treated together.

## ASSIGNMENTS OF ERROR

{¶ 11} "The trial court denied appellant due process to a fair trial by rendering a verdict of guilty after the judge had recused himself on a companion case in which appellant had an interest."

{¶ 12} "The trial court denied appellant due process to a fair trial and verdict by rendering a verdict guilty knowing he intended to recuse himself."

{¶ 13} "The trial court errored [sic] in denying appellant's motion for new trial."

{¶ 14} Appellant's assignments of error allege a denial of due process. The due-process error allegedly occurred both in the trial court's judgment of conviction and in the denial of a motion for new trial. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires criminal prosecutions to comport with prevailing notions of fundamental fairness. *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413. The Due Process Clause also entitles a criminal defendant to an impartial and disinterested tribunal. *Marshall v. Jerrico, Inc.* (1980), 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182.

{¶ 15} A court may grant a new trial due to an "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." Crim.R. 33(A)(1). The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. An abuse of discretion exists when the record

demonstrates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331. A new trial should not be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule or was thereby prevented from having a fair trial. *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 35.

{¶ 16} All of appellant's assignments of error deal with whether he had a fair trial based on the circumstances surrounding the recusal of the original trial judge. Appellant's primary argument is that he presented a viable defense to the aggravated-menacing charges and that he should be given a chance for this defense to be considered by an impartial trier of fact. Appellant also argues that there is no proof that the victims were actually afraid when confronted by the gun or by appellant's threats and that this absence of fear would have prevented a conviction for aggravated menacing if there had been an impartial trier of fact.

{¶ 17} We must reiterate here that we will not review because we do not have the authority to review whether or not the trial judge should be disqualified from presiding over the case, or the propriety of the trial court's eventual decision to recuse. R.C. 2701.031 provides the exclusive means for determining whether a trial judge is biased, prejudiced, or is otherwise disqualified from presiding over a given matter. *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657; see also Section 5(C), Article IV, Ohio Constitution. A disqualification request is initiated by filing an affidavit of disqualification with the Court of Common Pleas. R.C. 2701.031(B). Disqualification proceedings are not initiated in the court of appeals and cannot be reviewed by a court of appeals. *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441, 8 O.O.3d 438, 377 N.E.2d 775. We do have the authority, though, to review the trial court's rulings for alleged errors of law or procedure that may stem from bias or other conflicts of interest. *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, ¶ 118.

{¶ 18} Appellant's first argument is that there was a failure of due process because he had a valid defense to the aggravated-menacing charge and that his defense was never heard by an impartial trier of fact. "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459, 668 N.E.2d 457. "[T]he concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur." Id. To establish a violation of due process, there must also be a showing of some type of prejudice suffered by the error. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 70.

{¶ 19} The aggravated-menacing statute, R.C. 2903.21(A), states:

{¶ 20} "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 21} There are a number of defenses applicable to a charge of aggravating menacing. Some of these defenses are self-defense, defense of others, and defense of property against trespassers, also referred to as the right of ejectment. With respect to self-defense, a person is privileged to use only that force that is reasonably necessary to repel the attack. *State v. Williford* (1990), 49 Ohio St.3d 247, 249–250, 551 N.E.2d 1279. In this case, appellant threatened to use deadly force against the repossession agents. Deadly force, in this context, is "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). In order to prove self-defense by means of deadly force, a defendant has to prove that "(1) he was not at fault in creating the situation giving rise to the shootings, (2) he had reasonable grounds to believe and an honest belief that he was in immediate danger of death or great bodily harm and that his only means of escape from such danger was by the use of deadly force, and (3) he had not violated any duty to escape to avoid the danger." *State v. Cooper,* 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 18.

{¶ 22} Self-defense has both objective and subjective elements. The defendant's fear of immediate death or great bodily harm must be objectively reasonable. In addition, "Ohio has adopted a subjective test in determining whether a particular defendant properly acted in self-defense. The defendant's state of mind is crucial to this defense." *State v. Koss* (1990), 49 Ohio St.3d 213, 215, 551 N.E.2d 970. Thus, there must be both reasonable (objective) grounds to believe that harm is imminent, and there must be an honest (subjective) belief that harm is imminent. *State v. Thomas* (1997), 77 Ohio St.3d 323, 330, 673 N.E.2d 1339.

{¶ 23} Another possible defense to the charge of aggravated menacing is that the defendant was attempting to defend someone else and used reasonable force to do so. A person may use appropriate force to defend another person from imminent harm. *State v. D.H.,* 169 Ohio App.3d 798, 2006-Ohio-6953, 865 N.E.2d 90, ¶ 32. A defendant invoking the privilege of "defense of others" is only entitled to use as much force as the person being defended was permitted to use. *State v. Wenger* (1979), 58 Ohio St.2d 336, 340, 12 O.O.3d 309, 390 N.E.2d 801.

{¶ 24} The defense of ejectment of trespassers may also be relevant when one is charged with aggravated menacing. This defense is also referred to

as defense of property. "While a person has a right to protect his property from a trespass, and, after warning or notice to the trespasser, use such force as is reasonably necessary so to do, he cannot unlawfully use fire arms [sic] to expel the intruder where he has no reasonable ground to fear the trespasser will do him great bodily harm." *State v. Childers* (1938), 133 Ohio St. 508, 516, 11 O.O. 191, 14 N.E.2d 767. Once again, if a person brandishes a deadly weapon to expel trespassers, then the defense-of-property argument would necessarily need to include proof of his fear of death or great bodily harm, rather than simple fear of any bodily harm.

{¶ 25} In determining whether there are reasonable grounds for believing there was an imminent threat of great bodily harm, the court can consider whether the defendant received prior threats or encountered prior trespassers. *State v. Fields* (1992), 84 Ohio App.3d 423, 428, 616 N.E.2d 1185.

{¶ 26} The record indicates that appellant was in his own home at the time of the incident. As noted above, there is no duty for a person to retreat from his or her own home. There was evidence establishing that appellant was upstairs on the phone when he heard Shauna Pupin scream and that he subsequently grabbed his gun and ran to the door. He testified that he lives in a dangerous neighborhood, that his home had been "shot up" before, and that he had been previously threatened at his home. He testified that he never pointed his gun at the two repossession agents. It is possible that a trier of fact could have interpreted these facts as indicating that appellant had a reasonable belief of imminent death or great bodily harm to himself or to someone in his home and that he used reasonable, albeit deadly, threat of force to repel the threat that he perceived.

{¶ 27} Normally, the mere existence of facts that could support a different verdict would not be a basis for granting a motion for a new trial. In this case, though, appellant argues that he was denied due process because the trial judge had an admitted conflict of interest or other reason to recuse himself at the time the verdict was issued, thus putting in question whether the trial judge fairly considered appellant's defenses. This is not to say that the judge was actually biased or that he acted out of some improper motive. Because of the timing of the trial court's filings, it is an appearance of unfairness, rather than any real identifiable bias or prejudice, that appears from the record. The court's journal clearly indicates that the trial judge filed his judgment entry of conviction at 9:05 a.m. on April 9, 2007, and then filed a judgment entry of recusal at 9:10 a.m. on that same date. It is true that the trial judge issued an oral verdict of guilty on February 23, 2007, but this verdict was not journalized until April 9, 2007. Since a court speaks only through its journal, the trial court could have changed its oral guilty verdict prior to April 9, 2007. *State v. Stewart*, 11th Dist.

No. 2001–P–0035, 2002-Ohio-7270, 2002 WL 31886657, ¶ 18. In any event, the verdict did not become effective until it was filed on 9:05 a.m. on April 9, 2007. There is no indication of any occurrence between 9:05 a.m. and 9:10 a.m. that caused the judge to recuse himself. There is some evidence that the oral guilty verdict announced on February 23, 2007, may be somehow related to signs that appellant placed on his property about the case. The trial judge interpreted these signs as a "dare" for the court to put appellant in jail. The appearance of unfairness, and, thus, the due-process error, arises from the juxtaposition of appellant's provocative signs, the delay in rendering the actual guilty verdict, and the almost instantaneous recusal of the trial judge after the guilty verdict was filed.

{¶ 28} It would be difficult to establish any due-process error in this case if the trial judge had actually filed his guilty verdict immediately after the February 23, 2007 status hearing, when he orally declared appellant to be guilty. Nevertheless, by waiting six weeks to file a judgment entry, the court was indicating, among other things, that judgment was not yet final when he announced appellant's guilt from the bench.

{¶ 29} Appellee argues that appellant never asked the trial judge to recuse himself, implying some type of waiver argument. Appellant, though, is not arguing that the judge should have recused himself and did not. Again, we are not asked to review the propriety of the recusal, itself. The alleged error arises from the near-simultaneous entry of the guilty verdict along with the sua sponte recusal of the trial judge. It is the relationship between these two events that creates the appearance of unfairness and the due-process violation. It is unclear how waiver could even apply to this situation. The error does not arise from appellant's belief that the trial court had a conflict of interest or some type of bias, but from the trial judge's own belief that he needed to recuse himself and the judge's decision to render a guilty verdict immediately prior to recusing himself.

{¶ 30} Appellee's main argument in rebuttal is that the second judge assigned to the case reviewed the guilty verdict and reaffirmed it, thus eliminating any possible bias. We do not find this to be a sufficient response by the trial court. There is no indication that a second trial took place, in which the new judge could actually hear the testimony of witnesses and judge credibility issues for himself. The issue in this case is whether appellant received a fair hearing from the trier of fact, and the trier of fact was the initial judge who later recused himself.

{¶ 31} Appellant also argues that the two repossession agents were not subjectively afraid of appellant's firearm or his threats. Thus, appellant believes

that one or more of the elements of aggravated menacing were not proven. Appellant bases this conclusion on the fact that the men actually followed him when he left his house and drove away in the car they were trying to repossess. Appellant contends that they could not have been afraid, or else they would not have followed him.

{¶ 32} The definition of aggravated menacing found in R.C. 2903.21(A) does not mention the word "fear," but the crime does require some proof that the victim was apprehensive or intimidated by the possibility that the offender would cause serious physical harm. The staff notes to R.C. 2903.21 state: "If the victim of a threat is not in fact intimidated, the offender's conduct would constitute attempted menacing if his purpose was to intimidate or he knew that his conduct would probably intimidate."

 {¶ 33} Although appellant is partially correct that aggravated menacing involves some demonstration that the victim was actually afraid or intimidated, he is incorrect in his analysis of the facts of the case. Even if we assume that the two victims were not afraid of or intimidated by appellant after they returned to their car, this does not necessarily mean they had no fear or apprehension when they stood face to face with appellant at the front door. The very act of leaving the house can be interpreted as an expression of some type of apprehension. The two men also called the police, which indicates a need for assistance in dealing with the confrontation. The trier of fact could have concluded, from the evidence presented at trial, that the two men were afraid or intimidated when appellant revealed that he had a gun and was prepared to use it.

 {¶ 34} On the other hand, a neutral trier of fact might have interpreted the evidence exactly as set forth by appellant and might have inferred that the two repossession agents were not afraid or intimidated. This could have led to an acquittal based on the failure of the state to establish all the elements of the crime. Since the record contains a cloud over the neutrality of the trier of fact, this adds another reason to remand the case for retrial so that a new trier of fact may evaluate not only appellant's defenses, but also the essential elements of the crime itself, to determine whether the crime of aggravated menacing (rather than attempted menacing) was actually committed.

{¶ 35} For these reasons, appellant's assignments of error are sustained and his conviction reversed. We also sustain appellant's counsel's motion to withdraw as of the date of oral argument in this appeal. The case is remanded for retrial or other proceedings consistent with this opinion.

Judgment accordingly.

VUKOVICH, P.J., and DEGENARO, J., concur.