[Cite as *State v. Chopak*, 2012-Ohio-1537.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96947**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BOWEN C. CHOPAK

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED IN PART; REVERSED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537925

**BEFORE:** Keough, J., Stewart, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** April 5, 2012

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office - Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Alison Foy
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Bowen C. Chopak, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of aggravated menacing and ethnic intimidation. For the reasons that follow, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶2} In June 2010, Chopak was indicted on one count of ethnic intimidation in violation of R.C. 2927.12(A), a fifth degree felony, and one count of aggravated menacing (the predicate offense for the ethnic intimidation charge) in violation of R.C. 2903.21, a first degree misdemeanor. He pled not guilty and waived his right to a jury trial.

{¶3} The state presented the testimony of four witnesses at trial: (1) Kimyatta Fuller; (2) Daivon Fuller, the 16-year-old son of Kimyatta Fuller; (3) Antoinette Fuller, the 14-year-old daughter of Kimyatta Fuller; and (4) Thomas Harrigan, a Cleveland police officer. The defense presented the testimony of Chopak and his cousin, Kyle Zadar.

{¶4} The evidence at trial demonstrated that this case arose out of a dispute between neighbors residing on Daisy Avenue in Cleveland, Ohio. Chopak lived at 3716 Daisy Avenue with his cousin Zadar and Zadar's girlfriend, Briana Kelly. Kimyatta Fuller lived a few houses away at 3700 Daisy Avenue with her two children, Daivon and Antoinette. Chopak, Zadar, and Kelly are Caucasian; Fuller and her children are African-American.

**{¶5}** Chopak, Zadar, and Kelly lived in a house on the back lot of a two-house lot. A metal chain-link fence over six feet tall separated the front lot from the back lot. A woman named Alyssa Ferro lived in the house on the front lot.

**{¶6}** Prior to May 16, 2010, when the incident giving rise to this case occurred, there were several incidents that contributed to escalating tension between Fuller and Chopak, Zadar, and Kelly. About three weeks before the events at issue, the police were called to Fuller's house because Fuller's son Daivon, who is over six-feet tall and weighs more than 210 pounds, had abused the family's Rottweiler dog by slamming him into a tree, punching him in the head, and then hitting him on the head with a baseball bat. Several neighbors, including Chopak, witnessed this incident. Chopak testified that he was fearful of the Fullers as a result of this incident and considered them to be violent.

**{¶7}** Zadar testified that in another incident two weeks before May 16, 2010, Fuller came to his house to complain that Kelly had been saying things about Fuller that she did not like. Zadar testified that Fuller told him, "[i]f you are going to talk s---, I will send my sons over." Zadar testified that a few minutes after Fuller left, three African-American males came to his door and complained that he had disrespected Fuller. Zadar allegedly told them he did not care and shut the door. According to Zadar, he and Kelly were subsequently verbally harassed by Fuller, her friend, and Daivon as they walked past Fuller's house.

**{¶8}** Fuller testified that around dinner time on May 16, 2010, Daivon came home and reported that he had passed Chopak on the sidewalk as he was walking the

family dog.  Daivon told Fuller that Chopak had bumped him in the shoulder as he walked past him but did not say "excuse me."  Daivon reported that he told Chopak "excuse me, words in every language,"[1] and Chopak responded, "watch where you are f------ going."

{¶9}   Fuller testified that she immediately called Ferro to ask if Chopak was at her house, and upon learning that he was there, went to Ferro's house with her  neighbor Amelia.  Fuller and Amelia walked in the front door of the house and found Chopak and Zadar eating dinner there.   Fuller then began questioning Chopak about the shoulder-bumping incident with Daivon.

{¶10} Fuller testified that Chopak ignored her at first, and then told her that he did not want to talk to her.  According to Fuller, Chopak became upset when she continued to question him, threw his plate of food at the wall, and used obscenities at her.   He then got up from the table and walked out the back door of Ferro's house toward his house. Fuller admitted that instead of letting Chopak leave, she followed him out the back door and continued to question him about the incident.  According to Chopak, Fuller cursed and harassed him as he walked away.  Chopak testified that as he was walking toward his house, Fuller slapped him on the back of his head so hard that it knocked off his baseball cap and that as he bent down to pick it up, she told him, "I'll kick your ass myself" and called him a "racist cracker."

---

[1]Although the transcript indicates that Daivon testified that he told Chopak "excuse me, words in every language," the prosecutor averred to this court that Daivon testified he told Chopak, "excuse me, works in every language."

{¶11} Chopak walked through the gate of the chain-link fence onto his lot and closed the gate. Fuller remained on the other side of the fence but stood by the gate and continued to verbally harangue Chopak. According to Fuller, Kelly then came out of the back house and began using vulgar language and hurling racial slurs at her. Chopak then pulled a small knife out of his pocket, stabbed it several times through the gate, and told Fuller, "I will f------ kill you and slit your throat, you f------ n-----."

{¶12} Chopak testified that he pulled the knife because he felt threatened when he saw four African-American males come from around the front of Ferro's house and walk into the backyard as he and Fuller were arguing at the fence. Fuller, along with Daivon and Antoinette, who had heard the commotion and come down to see what was going on, denied that there were any other males in the yard during the confrontation.

{¶13} Eventually, Fuller's friend Amelia pulled Fuller away from the fence and persuaded her to go home. Shortly thereafter Fuller called the police and reported the incident.

{¶14} The trial court found Chopak guilty of both aggravated menacing and ethnic intimidation. The court sentenced him to one year of community control sanctions on the ethnic intimidation charge and to time already served in the county jail, six months, on the aggravated menacing charge.

## II. Sufficiency and Manifest Weight of the Evidence

**{¶15}** In his first and third assignments of error, Chopak contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶16}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶17}** A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

{¶18} Under R.C. 2903.21(A), governing aggravated menacing, "no person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *."  Aggravated menacing does not require that the offender be able to carry out his threat or even believe himself capable of carrying it out; it is sufficient if the offender knowingly causes the victim to believe the offender will carry his threat into execution.  *State v. Walker*, 8th Dist. No. 88694, 2007-Ohio-4047, ¶ 14, citing *State v. Charlton*, 11th Dist. No. 2006-T-0079, 2007-Ohio-2051, ¶ 12.  The gist of the offense is the victim's reasonable belief that serious physical harm is about to befall him.  *Id.*  A person acts knowingly when he "is aware that his conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

{¶19} Chopak argues that his conviction for aggravated menacing is against the manifest weight of the evidence because Fuller was the aggressor, and he pulled the knife only because he feared for his safety due to her aggressive behavior.  He also argues there was no evidence that Fuller believed he would cause her serious physical harm.  Chopak's arguments lack merit.

{¶20} The evidence demonstrated that Chopak voluntarily pulled a knife from his pocket and stabbed it several times through the fence at Fuller, who testified she was only inches away from the knife, while threatening that he would slit her throat.  This evidence is sufficient to demonstrate that Chopak knew that such conduct would cause

Fuller to believe that he would cause her serious physical harm, thereby satisfying the "knowingly" element of the offense.

**{¶21}** Furthermore, although Fuller testified on direct examination that "honestly at the time, the knife wasn't what I was worried about. It was what he was saying," she stated twice on cross-examination that when Chopak pulled the knife, she believed he was going to hurt her. Although we consider the credibility of the witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996) and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). Furthermore, a jury is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. No. 93593, 2010-Ohio-4006, ¶ 16. Upon review, we do not find that the trial court lost its way or created a miscarriage of justice in finding that Fuller believed that Chopak would cause her serious physical harm.

**{¶22}** Accordingly, we find that Chopak's conviction for aggravated menacing is supported by the manifest weight of the evidence; thus, it is also supported by sufficient evidence. His conviction for aggravated menacing is therefore affirmed.

**{¶23}** With respect to the ethnic intimidation count, R.C. 2927.12 provides that "[n]o person shall violate section 2903.21 * * * by reason of the race, color, religion, or

national origin of another person or group of persons." Hence, "the crime of ethnic intimidation occurs when a person commits a specified predicate offense *by reason of* race, color, religion, or national origin." *State v. Wisniewski*, 8th Dist. No. 77152, 2000 WL 1689714 (Nov. 9, 2000) (emphasis added).

**{¶24}** We find insufficient evidence in this record that Chopak threatened Fuller with a knife because of her race. There is simply no evidence in this record that Chopak selected Fuller as his victim because she is African-American, nor is there any evidence that his menacing acts were taken because of her race. Rather, the evidence demonstrates that Chopak's actions were taken in response to Fuller's refusal to back away from a confrontation that she instigated by confronting him in Ferro's house, and then escalated by following him out of the house and haranguing him as he walked away. It would not be unreasonable for anyone to react in anger to such confrontational conduct. And although Chopak's use of the "N word" was offensive, "repugnant or obnoxious language does not, in itself, demonstrate than an action was undertaken 'by reason of the victim's race.'" *State v. Kingery*, 2d Dist. No. 24063, 2012-Ohio-505, ¶ 20. Here, it is apparent that the threats Chopak made were prompted by Fuller's conduct and not "by reason of" her race.

**{¶25}** The State's reliance on *State v. Sura*, 8th Dist. No. 85309, 2005-Ohio-3838, is not persuasive. In *Sura*, this court found that the defendant's conviction for ethnic intimidation was not against the manifest weight of the evidence where shortly after an African-American family moved into an all-white neighborhood, the defendant poured

gas and weed killer on the family's lawn, threatened to throw a brick at two members of the family, and made numerous derogatory racial remarks to the family over a period of several months. Unlike this case, there was no evidence in *Sura* that the defendant's conduct was provoked and it was clear the defendant's action were initiated because of the family's race.

{¶26} Viewing the evidence in a light most favorable to the prosecution, we find insufficient evidence to indicate that Chopak's menacing actions occurred because of Fuller's race. Accordingly, the trial court erred in denying his Crim.R. 29 motion for acquittal on this count. Chopak's conviction for ethnic intimidation is therefore reversed.

{¶27} Assignments of error one and three are sustained in part and overruled in part.

### III. Self-Defense

{¶28} In his second assignment of error, Chopak argues that the trial court erred in denying his Crim.R. 29 motion for acquittal on the aggravated menacing count because he proved he acted in self-defense.

{¶29} Self-defense is an affirmative defense to a charge of aggravated menacing. *State v. Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182, ¶ 21 (7th Dist.). To establish self-defense, the defendant must prove that he (1) was not at fault in creating the situation, (2) had a bona fide belief that he was in imminent danger of death or great

bodily harm and that the only means of escape was the use of force, and (3) did not violate any duty to retreat or avoid the danger.  *Id.*

**{¶30}** Here, the evidence regarding the second prong, i.e., whether Chopak had a bona fide belief that he was in imminent danger of great bodily harm, was disputed. Chopak testified that he pulled out the knife when he saw four African-American males come around the front of Ferro's house and into the backyard where he was arguing with Fuller.  He testified that he feared for his safety because Fuller told him that "my people are here to jump [you].  They are going to f--- these crackers up."  But Fuller, Daivon, and Antoinette all denied these alleged four males ever came into the backyard during the confrontation.

**{¶31}** Faced with such conflicting testimony, the trial court, as the finder of fact, had the responsibility to determine credibility.  Given the discrepancy between the testimony, the trial court did not err in determining that Chopak's testimony regarding the males was not credible and, therefore, that he did not establish a bona fide belief that he was in imminent danger of great bodily harm or death. Accordingly, the trial court did not err in denying Chopak's Crim.R. 29 motion for acquittal on this basis.  The second assignment of error is therefore overruled.

**{¶32}** Affirmed in part and reversed in part; remanded for the trial court to enter an order vacating Chopak's conviction for ethnic intimidation.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
MARY EILEEN KILBANE, J., CONCUR