[Cite as *State v. Shavers*, 2016-Ohio-5561.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                           :

      Plaintiff-Appellee,                         :

      - vs -                                              :

MIQUEL SHAVERS,                                    :

      Defendant-Appellant.                      :

CASE NO. CA2015-12-212

O P I N I O N
8/29/2016


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 15CRB03805


Neal Schuett, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher Frederick, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant


**S. POWELL, J.**

{¶ 1} Defendant-appellant, Miquel Shavers, appeals from his conviction in the Hamilton Municipal Court for one count of aggravated menacing. For the reasons outlined below, we affirm.

{¶ 2} On October 5, 2015, Shavers was arrested and charged with two counts of aggravated menacing in violation of R.C. 2903.21(A), both first-degree misdemeanors. The charges stemmed from allegations that he had threatened to shoot both Krysta Hoskins

("Hoskins") and Dustin Chambers ("Chambers"). It is undisputed that Shavers is the boyfriend of Chambers' sister, Jitanna Chambers ("Jitanna"), who is the mother of Shavers' two children. It is also undisputed that Hoskins and Chambers, who are married, lived at the same residence as Jitanna at all times relevant.

{¶ 3} On November 24, 2015, the matter proceeded to a bench trial, during which time the trial court heard testimony from Hoskins, Chambers, Jitanna, and Shavers, among others. Following trial, the trial court issued its decision finding Shavers not guilty as it relates to Chambers, but guilty as it relates to Hoskins. In so holding, the trial court addressed Shavers and stated:

> You didn't deny that you were there threatening people. Threatening people is basically the legist of what you're accused of doing. But with regard to Mr. uh – the charge that involved Mr. Chambers as a witness, said he wasn't afraid. Not Guilty. With regard to the charge with regard to Ms. Hoskins who by the way, I believe her testimony more than anyones (sic) in the case. I'm finding you to be Guilty.

The trial court then sentenced Shavers to a suspended sentence of 180 days in jail and ordered him to pay a $300 fine. Shavers was also placed on two years of community control and required to attend anger management. Shavers now appeals from his conviction, raising a single assignment of error for review.

{¶ 4} MR. SHAVERS' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 5} In his single assignment of error, Shavers argues his conviction for aggravated menacing was against the manifest weight of the evidence. We disagree.

{¶ 6} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the

reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 19.

{¶ 7} As noted above, Shavers was convicted of one count of aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor, which provides, in pertinent part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" In turn, although the definition of aggravated menacing found in R.C. 2903.21(A) does not include the word "fear," the crime "does require some proof that the victim was apprehensive or intimidated by the possibility that the offender would cause serious physical harm." *State v. Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, ¶ 32. Yet, even then, the state is not required "to prove that the offender is able to carry out the threat or even that the offender intended to carry out the threat." *State v. Russell*, 12th Dist. Warren Nos. CA2011-06-058 and CA2011-09-097, 2012-Ohio-1127, ¶ 12. Rather, "the offender merely must have a purpose to intimidate or know that his conduct would probably intimidate." *State v. Applegate*, 12th Dist. Warren No. CA2013-08-070, 2014-Ohio-1697, ¶ 10.

{¶ 8} At trial, Hoskins testified that Shavers sent her several text messages and proceeded to make threats that he was going to come to her house and shoot her and her husband, Chambers. According to Hoskins, these text messages included threats from Shavers that he was going to "smoke her" and "take [her] out." Due to these threats, Hoskins testified she called the police because she was scared and worried about what Shavers might do.

{¶ 9} Hoskins then testified that Shavers and his girlfriend, Jitanna, arrived at her house, jumped out of their car, and "started talking crazy" with "a lot of words exchanged. Arguing." According to Hoskins, Shavers then said he was "fixin' to get a gun now," before returning to his car and getting "something that looked like a gun." When asked about the gun, Hoskins testified that she had never seen a gun except for what was on television, but that "it looked like a gun – a gun to me."

{¶ 10} Continuing, Hoskins testified that Shavers then threatened to "smoke" her and her husband before yelling at his girlfriend "to get back in the effing car because [they] called the cops." Hoskins then testified that Shavers said "this [gun] may not be real but the next one will [be]" before driving away. These threats, coupled with the presence of what she believed to be a gun, caused Hoskins to fear for her safety and physical well-being. Although indicating he was not scared or fearful of Shavers, Chambers provided substantially similar testimony to that of Hoskins.

{¶ 11} In Shavers' defense, Jitanna testified that she and Shavers went to the house so that she could use the restroom when a verbal altercation occurred between herself, Hoskins, Chambers, and Shavers. However, Jitanna testified that "nothing was mentioned about a gun or none of that. It was just a verbal argument." Thereafter, when specifically asked about whether she saw Shavers with a gun that day, Jitanna testified that she did not. Jitanna also testified she did not hear Shavers ever mention a gun. Jitanna further

testified that when she realized Hoskins had called the police, she too called the police before getting back in the car with Shavers and driving off.

{¶ 12} Shavers also testified. As part of his testimony, Shavers readily admitted that he made threats to Chambers, but denied making any threats to Hoskins. Specifically, when asked if he ever threatened Hoskins that day, Shavers testified "[n]o. No, I didn't. It was just me and [Chambers] arguing back and forth." According to Shavers, such threats were merely verbal and had nothing to do with a gun. As Shavers testified, "it wasn't with a gun. It was with words." Shavers also testified that he did not have a gun with him that day, nor anything else that would appear to be a gun. Rather, Shavers testified that "it was just um – like an argument that we normally got into but they just put lies on top if it for some reason."

{¶ 13} After a thorough review of the record, we find Shavers' conviction for aggravated menacing of Hoskins was not against the manifest weight of the evidence. As noted above, Hoskins testified that Shavers made several threats that he was going to shoot her and her husband, Chambers, through a series of text messages. Hoskins then testified that Shavers again threatened to shoot her and her husband after arriving at their house and brandishing something that she believed to be a gun. As Hoskins testified, these threats, coupled with the presence of what appeared to be a gun, caused her to fear for her safety and physical well-being.

{¶ 14} Shavers claims Hoskins' testimony was not credible, thereby requiring his conviction be reversed. However, as the trial court stated when addressing the credibility of the witnesses, "I believe [Hoskins'] testimony more than anyones (sic) in the case." As the trier of fact is in the best position to judge the credibility of the witnesses, "we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13.

Moreover, although faced with conflicting evidence, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Therefore, because this is not one of those extraordinary cases where the evidence presented at trial weighs heavily in favor of acquittal, Shavers' single assignment of error is without merit and overruled.

{¶ **15**} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.