[Cite as *State v. McFarland*, 2024-Ohio-4974.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF WARREN,<br><br>        Plaintiff-Appellee,<br><br>- vs -<br><br>BRANDON EDWIN MCFARLAND,<br><br>        Defendant-Appellant. | CASE NO. 2024-T-0018<br><br>Criminal Appeal from the<br>Warren Municipal Court<br><br>Trial Court No. 2023 CRB 001252 |

**O P I N I O N**

Decided: October 15, 2024
Judgment: Affirmed

*Enzo Cantalamessa*, Warren City Law Director, and *Cheryl Zebrasky*, Assistant Prosecutor, 391 Mahoning Avenue, N.W., Warren, OH 44483 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Brandon Edwin McFarland ("the defendant" or "Mr. McFarland"), appeals the judgment of the Warren Municipal Court convicting him on one count of Aggravated Menacing, a misdemeanor of the first degree. We affirm.

{¶2} Michael McFarland ("the victim"), who is unrelated to the defendant in this matter, is the owner and operator of McFarland Lawncare. He was hired by Mr. McFarland's mother, S.M., to do lawn maintenance for the spring and summer months of 2023. The victim's company performed services on S.M.'s property eight times without receiving payment. S.M. owed the company $790.00. Invoices were sent through the

mail, but S.M. refused to send payment by mail. S.M. subsequently sent the victim a text message inviting him to pick up the payment at the residence. The victim and S.M. also communicated via telephone during which the latter invited the former to pick up payment at the residence. The victim, as a general rule, did not pick up payments from customers' homes; under the circumstances, however, the victim decided to make an exception.

{¶3} After attending church on Sunday, July 2, 2023, the victim, his wife, and his four children stopped at S.M.'s residence to collect payment for the lawn care services. The victim exited his vehicle and proceeded to the home's front door. In his periphery, he noticed someone inside the house "fiddling" with the interior blinds.

{¶4} The victim knocked on the front storm door and a male, later identified as Mr. McFarland, cracked the main door. Mr. McFarland asked the victim to identify himself and asked "what do you want?" The victim introduced himself and explained he was at the residence to see S.M. regarding final payment for lawn care services. Mr. McFarland stated S.M. was not at the home, "instantly [went] to an aggressive stance," brandished a firearm, "rack[ed]" it, and pointed it at the victim's chest. Mr. McFarland advised the victim to "get off [his] property. I'll blow your fucking head off."

{¶5} The victim stated he was extremely nervous and raised his hands in the air. He stated that he felt as though he was going to be shot and killed in front of his family. He backed away from the door, returned to the vehicle, and immediately dialed 911. Meanwhile, Mr. McFarland exited the home, no longer holding the firearm, and began circling the victim's vehicle. Mr. McFarland's girlfriend also exited the residence, shouting at the victim and casting obscene gestures at the family. After circling the vehicle, Mr. McFarland briefly stood behind the vehicle preventing the victim and his family from

2

leaving the property. Finally, the victim and his family were able to leave. They pulled into a nearby parking lot and waited for police.

{¶6} Officer Michael Lowry of the Champion Township Police Department arrived at the parking lot and spoke with the victim. The victim explained what occurred and spoke of fearing for his life. Officer Lowry waited for an additional officer to arrive and went to the residence. Considering the victim's rendition of events and the potential danger, Officer Lowry used his cruiser's PA system advising the occupants exit the residence unarmed. He repeated the advisement two or three times. S.M. eventually exited the residence yelling at the officers and demanding they "get the fuck off [her] property." She additionally told the officers "my son didn't do anything wrong."

{¶7} Eventually, Mr. McFarland exited the residence, and S.M. became less agitated. Mr. McFarland explained that he did have a firearm when the victim approached the home, but it was at his side. He claimed he never pointed the weapon at the victim. He reasoned that he had the firearm because an unknown male had arrived at his residence demanding money and he felt he needed the weapon for protection. Mr. McFarland refused to provide Officer Lowry with a statement.

{¶8} Although no arrest occurred on the date in question, Mr. McFarland was later charged with one count of Aggravated Menacing, in violation of R.C. 2903.21, a misdemeanor of the first degree. The matter proceeded to jury trial after which Mr. McFarland was found guilty. Mr. McFarland was sentenced to 180 days in jail, with 170 suspended, fined $250, and placed on probation for three years. This appeal follows.

{¶9} Mr. McFarland assigns the following as error:

{¶10} "Appellant's conviction is not supported by sufficient evidence and is against the manifest weight of the evidence."

{¶11} In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶12} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, 386-387. "[A] reviewing court asks whose evidence is more persuasive - the state's or the defendant's?" *Wilson* at ¶ 25. Conducting this inquiry, an appellate court considers all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983). "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" *State v. Barnes*, 2023-Ohio-353, ¶ 43 (11th Dist.), quoting *State v. Heald*, 2022-Ohio-2282, ¶ 19 (11th Dist.).

{¶13} Mr. McFarland argues that, despite brandishing the firearm, he was simply defending his property against a trespasser in an effort to eject the victim. He maintains

4

he had a right to protect his property against the alleged trespasser and act promptly as was reasonably necessary under the circumstances. Mr. McFarland emphasizes that he repeatedly told the victim to leave the premises, but despite the instructions, the victim failed to do so. Mr. McFarland maintains his actions were fundamentally reasonable under the circumstances. In effect, it appears Mr. McFarland's position is he introduced sufficient evidence to establish his defense-of-property defense to overcome the evidence adduced by the state to support a conviction. We do not agree.

{¶14} The defense of ejectment of trespassers may be relevant when one is charged with aggravated menacing. *State v. Lundt*, 2009-Ohio-416, ¶ 24 (7th Dist.). This affirmative defense is commonly understood as defense of property. *Id.* "[A] person has a right to protect his property from a trespass, and, after warning or notice to the trespasser, use such force as is reasonably necessary so to do . . . ." *State v. Childers*, 133 Ohio St. 508, 516 (1938). "The burden is on the defendant to prove the elements of an affirmative defense by a preponderance of the evidence." *State v. Ngrin*, 2016-Ohio-2901, ¶ 14 (11th Dist.).

{¶15} Initially, the record does not include a transcription of the jury instructions. The instructions were not transcribed at the request of appellate counsel. It is the burden of an appealing party to demonstrate error on appeal. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Mr. McFarland's argument focuses on his position that he established the affirmative defense of defense of property. If the jury was not instructed on the affirmative defense of defense of property, it would have no legal basis to conclude Mr. McFarland's actions were based upon this theory. Without a transcript, it is unclear whether trial counsel requested the defense-of-property instruction

5

or objected to its absence. "If there was no formal objection and the record does not reveal a material dispute over the jury instructions, appellate review must be limited to plain error under Crim.R. 52(B)." *State v. Kiehl*, 2016-Ohio-8543, ¶ 25 (11th Dist.) We discern no plain error and, in the alternative, even if the jury was instructed on the defense at issue, we conclude Mr. McFarland failed to meet his burden.

{¶16} First, there was no credible evidence demonstrating the victim was a trespasser. Criminal trespass is defined as knowingly entering or remaining on the land or premises of another without privilege to do so. *See* R.C. 2911.21. The victim testified that S.M., the owner of the residence and the individual with whom the victim contracted to take care of the property's lawn, invited him, on several occasions, to come to the home and obtain the payment he was owed. There was no evidence to refute the victim's testimony. This is sufficient, credible evidence that the victim knowingly entered the property with privilege to do so.

{¶17} Moreover, the victim testified he introduced himself as the owner of the lawn-care business that had serviced the property. Mr. McFarland admitted he was aware that the lawn was being cared for by an outside service company. The victim explained to Mr. McFarland he was merely on the premises to meet with S.M. and collect final payment for those services. There was nothing to indicate the victim was rude, hostile, or abrasive toward Mr. McFarland. In fact, according to Officer Lowery, although Mr. McFarland refused to provide a statement, he did not indicate that the victim was in any way provoking or badgering him when he brandished the firearm. Additionally, the victim stated he and his family had just attended church when he stopped by the residence. In

6

Case No. 2024-T-0018

this respect, there was no evidence that the victim's attire would have made him appear particularly suspicious.

{¶18} Given the evidence, Mr. McFarland failed to establish the victim was a trespasser and that brandishing his firearm was reasonably necessary to protect his property from the victim.

{¶19} We shall next address Mr. McFarland's claim that the state failed to advance evidence to meet its burdens of production and persuasion. In his appellate brief, Mr. McFarland simply asserts his conviction is not supported by sufficient, credible evidence. He fails to offer any argument, however, challenging the adequacy and strength of the evidence the state advanced and how that evidence failed to meet the elements of the Aggravated Menacing statute. Nevertheless, for a comprehensive analysis, we shall consider the sufficiency and weight arguments.

{¶20} R.C. 2903.21(A) provides, in relevant part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person . . . ." Further, a person acts knowingly when "he is aware that his conduct will probably cause a certain result . . . ." R.C. 2901.22(B).

{¶21} Mr. McFarland did not dispute he brandished the firearm. Mr. McFarland also admitted he ordered the victim to "get the fuck off [his] property." The victim testified Mr. McFarland aggressively ordered him to leave the property or he would "blow [the victim's] fucking head off." The victim also testified, by virtue of the circumstances and Mr. McFarland's verbal threat, that he was in fear for his life when the firearm was brandished and pointed at him.

7

**{¶22}** Considering the evidence, the jury could conclude, beyond a reasonable doubt, that Mr. McFarland knowingly caused the victim to believe he would cause serious physical harm to the victim. The conviction is supported by sufficient, credible evidence.

**{¶23}** Mr. McFarland's assignment of error is without merit.

**{¶24}** The judgment of the Warren Municipal Court is affirmed.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-T-0018