**[Cite as *State v. Pennington*, 2011-Ohio-4445.]**

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                                          :

    Plaintiff-Appellee                                            :

                             C.A.    CASE    NO. 24090

v.

                                 :          T.C.    NO. 10CR388

RALLIEGH S. PENNINGTON                              :     (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant                                        :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    2nd    day of    September   , 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

PETER R. CERTO, Atty. Reg. No. 0018880, One South Main Street, Suite 1590, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

CELEBREZZE, J. (by assignment)

{¶ 1} Appellant, Ralliegh S. Pennington, challenges his conviction for aggravated robbery arguing that his trial counsel was constitutionally deficient and that this conviction is against the manifest weight of the evidence. After a thorough review of the record and law, we affirm.

{¶ 2} Appellant was convicted for his part in the attempted theft of a catalytic converter from a vehicle belonging to Keith Kelly and his wife. On January 24, 2010, Kelly was attempting to reconcile with his estranged wife. He was visiting her at her apartment in West Carrollton, Ohio. Kelly testified that he heard a loud buzzing or sawing noise coming from the parking lot. Thinking it strange that someone would be working on a car at ten o'clock at night in the rain, he looked out the window of the ground-floor apartment to see a pair of legs sticking out from beneath his wife's vehicle. Kelly told his wife to call the police and then exited the apartment with a handgun, for which he had a valid conceal carry permit.

{¶ 3} Upon reaching the vehicle, Kelly realized there were two sets of legs under the vehicle and shouted at the people to stand. Appellant and co-defendant, Clifford Chaffin, sprung from under the vehicle. Kelly testified that Chaffin was brandishing a knife in one hand, and the three men stood there for a moment; then, appellant ran from the area. Kelly kept his firearm down at his side and advised Chaffin to put down his knife. Chaffin slowly advanced forward while Kelly backed away. Kelly testified that, out of the corner of his eye, he saw a flash and turned in time to see appellant running full-speed toward him. Kelly raised his firearm and fired once, intentionally missing as appellant got to within approximately ten feet of him. Appellant stopped, turned, and ran across the parking lot to a house across the street. Chaffin cursed at Kelly and ran in the other direction.

{¶ 4} Officer Daniel Wessling conducted an investigation into the attempted theft of

the catalytic converter from Kelly's wife's vehicle. He arranged a photo array containing six photographs — one of appellant and five randomly selected from various databases that closely matched appellant's physical characteristics. Kelly identified appellant out of the photo array as the man who ran away initially and then returned. Kelly initially had some difficulty identifying Chaffin in a second photo array conducted in a similar manner due to the use of an out-of-date photograph of Chaffin. After a more recent photograph was used in a third photo array, Kelly had no problem identifying Chaffin as the man with the knife in the parking lot.

{¶ 5} Appellant and Chaffin were indicted on charges of aggravated robbery, and they were tried together on May 17, 2010. Just before trial commenced, appellant moved the court for new counsel arguing that his attorney did nothing to prepare for his defense. The court inquired into counsel's actions. After satisfying itself that counsel had prepared for trial, including filing a motion to suppress, receiving and researching discovery, and contacting witnesses, the trial court overruled appellant's motion, and trial began.

{¶ 6} During jury deliberations, it was discovered that one juror had left the jury deliberation room and refused to re-enter. She was crying and wanted to be sent home. The court, in chambers, consulted with the attorneys for the state and defendants to determine what should be done. The trial court brought the juror into chambers and, on the record, questioned her about her ability to continue. She indicated that she could and would continue to deliberate. She was reunited with the other jurors, and a verdict was reached a short time later.

{¶ 7} Appellant was found guilty of aggravated robbery and sentenced to a prison term of five years. He then filed the instant appeal raising two assignments of error.

## Law and Analysis

## Manifest Weight

{¶ 8} Appellant first argues that his "conviction is against the manifest weight of the evidence."  The Ohio Supreme Court has held that "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief.  In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?"   (Internal citations omitted.)   *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶25.

{¶ 9} The court went on to hold that, "although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'"   Id., quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 10} Here, appellant was convicted of violating R.C. 2911.01(A)(1), which states in part: "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"   R.C. 2913.01(K)(4) defines a theft to include "[a] conspiracy or attempt to commit, or complicity in committing" an offense under R.C. 2911.01.

{¶ 11} Complicity is further defined in R.C. 2923.03(A)(2) to include one "acting with the kind of culpability required for the commission of an offense," aiding or abetting another in committing the offense. This culpable intent may be inferred from the circumstances surrounding the crime. *State v. McGhee*, Montgomery App. No. 23226, 2010-Ohio-977, ¶67.

{¶ 12} Here, Kelly testified that Chaffin, while next to appellant, rose from under the vehicle with a knife in his hand. The three men stood there for a brief period with Chaffin brandishing the knife before appellant ran off. Appellant then returned, charging toward Kelly. Appellant argues that his attempt to flee evidences an abandonment of any criminal intent or purpose. However, his full-steam charge at Kelly nullifies any such argument. Chaffin was brandishing a knife while appellant stood next to him. The two had just been engaged in an attempt to cut the catalytic converter from Kelly's wife's vehicle. Appellant attempted to charge at Kelly while he and Chaffin were at a stand-off, aiding Chaffin in escape.

{¶ 13} From the testimony adduced at trial, it is clear the jury did not lose its way in convicting appellant of aggravated robbery. Appellant's run at Kelly from a blind position indicated that appellant possessed the necessary culpable mental state to be convicted of aggravated robbery.

### Ineffective Assistance of Counsel

{¶ 14} Appellant next argues that he "received ineffective assistance of counsel which amounted to a violation of his Sixth Amendment right to counsel."

{¶ 15} This court has previously recognized that "[t]o establish a violation of the Sixth Amendment on grounds of ineffective assistance of counsel, a criminal defendant must show

(1) that counsel's performance was deficient, and (2) that counsel's deficient performance resulted in prejudice." *State v. Malone* (Dec. 13, 1989), Montgomery App. No. 10564, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 16} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397. These cases strongly direct us to presume that defense counsel adequately performed duties owed to the client.

{¶ 17} This court went on to note that "[d]eficient performance means that claimed errors were so serious that the defense attorney was not functioning as the 'counsel' that the Sixth Amendment guarantees." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, ¶24, citing *State v. Cook* (1992), 65 Ohio St.3d 516, 524.

{¶ 18} Appellant now raises six instances where his trial counsel allegedly failed to adequately perform his duties.

{¶ 19} Appellant first argues that his attorney should have raised questions regarding competency to stand trial. No evidence exists in the record, except appellant's own statement at sentencing, to demonstrate that appellant had any mental condition. The trial court had various colloquies with appellant several times throughout trial, and appellant always indicated he understood the proceedings. "A defendant is competent to stand trial if he is capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. * * * Absent evidence to the contrary, a defendant is presumed to

be competent. R .C. 2945.37(G)." *State v. Skatzes*, Montgomery App. No. 15848, 2003-Ohio-516, ¶360, citing *State v. Carter*, 89 Ohio St.3d 593, 603, 2000-Ohio-172; R.C. 2945.37(G). See, also, *State v. Rose*, Clark App. No. 2004 CA 40, 2005-Ohio-3182, ¶9-11.

{¶ 20} Appellant's responses to questions were lucid and appropriate. Nothing in the record demonstrates that appellant could not properly aid in his defense or understand the proceedings. Appellant has failed to demonstrate that his mental state should have been raised by his attorney and that a failure to do so resulted in prejudice.

{¶ 21} Appellant next argues that he should have been allowed to take the stand to testify in his own defense. He asserts it was error for his attorney to counsel him otherwise. However, the trial court made clear that the decision to take the stand or remain silent was appellant's decision alone. The trial court asked appellant twice whether he wished to testify and explained his rights associated with this decision both times. The court ensured that it was appellant's wish not to testify and that appellant was not coerced into that decision by his trial counsel or anyone else.

{¶ 22} Appellant argues he was adjusting to new medication, which prevented him from making an informed decision. However, nothing in the record demonstrates that appellant could not understand his options and make a decision. Further, a decision to testify may have allowed the state to introduce evidence of appellant's criminal history, a significant detriment to appellant's defense. It was not ineffective assistance for appellant's attorney to counsel him to not testify given the important ramifications of a decision to testify.

{¶ 23} Appellant also argues that his attorney should have requested severance of his trial from that of his co-defendant.

{¶ 24} "The law favors the joinder of co-defendants and the avoidance of multiple

trials because it, 'conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries.'" *State v. Humphrey*, Clark App. No. 2002 CA 30, 2003-Ohio-3401, ¶64, quoting *State v. Daniels* (1993), 92 Ohio App.3d 473. Therefore, appellant has the burden of demonstrating material prejudice should a conjoined trial occur. *State v. Torres* (1981), 66 Ohio St.2d 340.

{¶ 25} Here, appellant relies on the holding of the U.S. Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, to support his argument. In *Bruton*, a defendant gave a statement confessing guilt that also inculpated his co-defendant. The Court ruled that such a statement, inadmissible against the co-defendant, impermissibly prejudiced his ability to confront the witnesses against him. Id. at 136-137. The Ohio Supreme Court has agreed stating, "[a]n accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying co-defendant by the admission of extrajudicial statements made by the co-defendant inculpating the accused." *State v. Moritz* (1980), 63 Ohio St.2d 150, paragraph one of the syllabus.

{¶ 26} However, *Bruton* is not applicable to the present case. Here, two witnesses testified that Chaffin told them he was attempting to steal a catalytic converter from a vehicle when the owner of the vehicle appeared and shot at him. Chaffin's statements did not inculpate or even mention appellant. These prior admissible statements against Chaffin are not evidence against appellant and do not implicate a violation of his right to confront the witnesses against him. See *State v. Reid*, Montgomery App. No. 19352, 2003-Ohio-4087, ¶10. Therefore, appellant's counsel was not ineffective for failing to request severance when

there existed no probability that such a motion would or should have been granted.

{¶ 27} Appellant also argues that his counsel was deficient for failing to make a renewed motion for acquittal pursuant to Crim.R. 29 after the close of his case. However, appellant's counsel did make a lengthy argument for acquittal after the close of the state's case. Following denial by the trial court, the appellant rested his case without putting on any witnesses or additional evidence. It is therefore highly unlikely that the trial court's decision would have changed given this fact. Appellant cannot show that his attorney's failure to make a renewed motion for acquittal resulted in prejudice, a necessary element of a successful claim of ineffective assistance. *Lytle* at 396-397.

{¶ 28} Appellant next argues that various jury instructions should have been requested based on his theory that he abandoned any criminal intent he possessed. According to the evidence adduced at trial, appellant did not abandon the criminal enterprise when he ran away. Therefore, trial counsel was not ineffective for failing to request instructions on abandonment and culpability. Also, the request of such instructions are matters of trial strategy. *State v. Winn*, 173 Ohio App.3d 202, 2007-Ohio-4327, ¶14.

{¶ 29} Appellant also claims counsel should have requested an instruction on theft, a lesser included offense of aggravated robbery. "Failure to request instructions on lesser included offenses may be a matter of trial strategy and, in that event, does not constitute ineffective assistance of counsel." *State v. Ward*, Montgomery App. No. 23134, 2010-Ohio-503, ¶21, citing *State v. Griffie*, 74 Ohio St.3d 332, 1996-Ohio-71.

{¶ 30} The request of an instruction on theft would be inconsistent with one of appellant's attorney's defensive strategies. Trial counsel argued that appellant was not and could not be identified as one of the men who attempted to rob Kelly. Therefore, an

instruction asserting that appellant only committed theft and not aggravated robbery would be antithetical to that theory. That decision is clearly a matter of trial strategy and not a proper grounds for ineffective assistance of counsel in this case. Id.

{¶ 31} Finally, appellant argues that trial counsel was ineffective for failing to request a mistrial after irregularities during jury deliberations came to light. Irregularities that affect a defendant's substantial rights may be grounds for a mistrial according to R.C. 2945.79. Appellant argues that the irregularities in jury deliberations did just that, and his attorney was constitutionally deficient for failing to request a mistrial.

{¶ 32} During deliberations, a court official informed the parties that Juror No. 4 had left the jury deliberation room sobbing and refused to return. She had signed a verdict form outside the presence of the rest of the jurors and left the room. After consulting with all attorneys in the case, the judge called the juror into his chambers, along with the court reporter, and inquired into her ability to continue as a juror. She indicated she could continue to serve and resume deliberations. It also came to light that she was using a handheld electronic gaming device during deliberations. The trial court later questioned her about this and inquired about any use of this device during trial. The parties were satisfied with her responses that she did not use the device while testimony was being given. Appellant was asked if he thought Juror No. 4 should continue serving as a juror, and he said that she should. After the verdict was read in open court, the trial court polled the jurors individually asking them if these were their verdicts and if they were arrived at voluntarily. They each answered affirmatively.

{¶ 33} In an analogous situation, the Ohio Supreme Court found that a trial court's polling of the jury individually after a juror was crying and refusing to re-enter the court room

provided evidence that the juror's verdict was a product of her own free will. *State v. Hessler*, 90 Ohio St.3d 108, 120, 2000-Ohio-30. That court further noted that the appellant had specifically agreed to the procedure used and waived all but plain error. Id.

{¶ 34} Similarly, appellant here agreed to the procedure used, and there is no evidence that a motion for a new trial would have been granted had such a motion been made. The trial court followed the same procedure used by the trial court in *Hessler* and scrupulously safeguarded appellant's rights. Based on this holding of the Ohio Supreme Court, appellant's counsel was not constitutionally deficient for failing to request a mistrial based on irregularity in the proceedings.

{¶ 35} Appellant has failed to demonstrate any error by his counsel that would have likely changed the outcome of his trial. Therefore, this assigned error is overruled.

The judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Andrew T. French
Peter R. Certo
Hon. Dennis J. Langer