# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RASHAN T. BELL,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 16 MA 0119**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2015 CR 337

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
AFFIRMED

---

*Atty. Ralph Rivera*, 21 West Boardman Street, 6th Floor, Youngstown, Ohio, 44503, for
Appellee and

*Atty. Desirea DePiero*, 8256 East Market Street, Suite 111, Warren, Ohio 44484, for
Appellant.

August 29, 2018

**BARTLETT, J.**

**{¶1}** Appellant, Rashan T. Bell, appeals the July 18, 2016 decision of the Mahoning County Court of Common Pleas. Appellant argues the trial court erred in denying his motions for mistrial and for new trial. For the following reasons, his sole assignment of error is without merit and this matter is affirmed.

<b>Facts and Procedural History</b>

**{¶2}** On April 30, 2015, Appellant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(3)(C), felony of the first degree, and one count of robbery, R.C. 2911.02(A)(2)(B), felony of the second degree. Both counts contained firearm specifications. Appellant entered not guilty pleas to both counts.

**{¶3}** Jury trial commenced on May 9, 2016. The jury began deliberations at 10:20 a.m. on May 12, 2016. (Tr. 480). At 11:05 a.m. the trial court responded to a jury question regarding the ability to view witness testimony. (Tr. 482). At 11:53 a.m. the jury requested a break for lunch which was provided. (Tr. 483). Subsequently at 2:25 p.m. the trial court responded to a jury note in the following manner:

> The Court: Ladies and gentlemen, I have a question that says, 'Does the fact that I believe that the defendant was complicit in the crime but have reasonable doubt that there is sufficient evidence that the defendant committed aggravated robbery or just robbery mean that I have to vote guilty?' The only thing I can tell you is that you should read the definition of complicity, aggravated robbery, and reasonable doubt. (Tr. 484).

**{¶4}** The jury was subsequently recessed for the day at 3:52 p.m. The trial court advised the jury not to discuss the case or permit anyone to discuss it in their presence, and not to form any opinions on the matter until they return for deliberations. (Tr. 485).

**{¶5}** The jury resumed deliberations at 9:00 a.m. the next day. At 10:11 a.m. the trial court responded to the following jury question:

> It reads, 'What do we do if we feel a juror won't follow the jury

instructions?'  Ladies and gentlemen, you took an oath to follow the law. The jury instructions are part of the law.  Therefore, you are under oath to follow the jury instructions and must.  (Tr. 486).

**{¶6}**    The next portion of the transcript notes that on May 13, 2016 at 10:00 a.m. (which appears to be an error in the time noted in the transcript: brief of Appellant states that this communication occurred around 11:30 a.m. when trial counsel for the Appellant read the jury note into the record), the following proceedings were had outside the presence of the jury with counsel and the court:

Mr. Lavelle [trial counsel for Appellant]:  I would start by reciting this question if that's okay with you.  For what it's worth, we're in the anteroom and out of the presence of the jury.  Everybody representing the parties is here except the defendant himself.  The question was given to me by the court, purportedly from the jury indicating, 'We are at a stalemate, as a juror refuses to follow the law as set before us. What do we do?' The word stalemate is circled.  At this point I – I would move this court to declare this jury to be hung and have a mistrial.  If the jury indicates they're at a stalemate, then there's no – there's no just verdict that's going to come from this.  They've been deliberating now for better than 24 hours in actual time and probably about 7 and a half or 8 hours in juror time.  They skipped lunch yesterday, and they went from about 10:30 to 4:00.  It's now I think 11:30.  They've been at it for two and a half hours.  We literally can hear screaming in the anteroom, which is next to the jury room.  The judge indicated she is going to make some determination that based on that question that maybe one of these jurors cannot follow the law and replace that particular juror with the first alternate.  We would absolutely object to that because you're essentially letting the jury make a judicial determination that he or she, whoever the holdout may be, can't follow the law.  All of this is premised on our – I guess our idea that there's an 11 to 1 deadlock and it's for guilty.  We have no knowledge of that.  We have no knowledge of what the holdout may be or what the vote is even at this

point in time. But as far as mechanically speaking, I think it's improper to dismiss a juror because the other persons on the jury determine by a note that he or she can't follow the law. So anything but a mistrial at this point is objected to by the defense. (Tr. 487-89).

{¶7} Trial counsel for the State argued that the jury note was not saying that they could not agree on a verdict, but rather that one juror refused to follow the law, and the State argued that the juror should be replaced. The trial court stated that "over defendant's objection, [the court] is going to bring the jury into the courtroom, inquire of the foreman if it is one juror, and if it is just one juror not following the law, the Court is then going to excuse that juror, replace with the first alternate, and then give the jury the option, since they have to begin their deliberations anew, either continuing their deliberations this afternoon or coming back on Monday. (Tr. 489-90).

{¶8} The transcript reflects that a short recess was had, and the trial court then advised the jury: "[W]e received your note, and based on your note, the attorneys have requested that they have time to research that issue. Therefore, I am going to dismiss you for the day at this time." (Tr. 490). The jury was subsequently recessed at 3:17 p.m. on May 13, 2016.

{¶9} Following the weekend recess, the jury resumed at 8:59 a.m. on May 16, 2016, and the trial court stated:

Let the record reflect that based on the question from the jurors Friday morning, the Court without objection – any further objection from counsel is going to interview the juror in question . . . in chambers without counsel present but on the record. (Tr. 492).

{¶10} The trial judge interviewed the juror in chambers, as follows:

**The Court**: Sit down, sir.

**Juror**: Right here?

**The Court**: Yeah. Let me preface this by saying you're not in trouble.

**Juror**: I'm sorry?

Case No. 16 MA 0119

**The Court**: You're not in trouble. There's no right or wrong, okay?

**Juror**: Oh, okay. Thank you.

**The Court**: I received a note from the jury on Friday, as you know, saying that one juror could not follow the law or the instructions.

**Juror**: That's not so, Judge.

**The Court**: That's why we're having this discussion. Can you explain to me – without telling me how you're going to vote, if possible, could you explain to me what's going on?

**Juror**: Okay. I just disagree with them on the –

**The Court**: The facts, the evidence?

**Juror**: Yes. Yes. And they want me to go one way and –

**The Court**: But you are following the law?

**Juror**: Yes ma'am.

**The Court**: And the instructions?

**Juror**: Yes. They want agreement on both charges, and I don't – I don't think that was sufficient evidence on the stronger charge, aggravated robbery.

**The Court**: Okay.

**Juror**: And they want me to –

**The Court**: Okay. Well, then I'm going to instruct the jury to go back and continue their deliberations.

**Juror**: Uh-huh.

**The Court**: And I want them – I'm going to tell them to do so with an open mind and reconsider all the evidence, okay? And I want you to do the same thing, but I'm going to put that on the record with the jury.

**Juror**: See, I –

**The Court**: As long as you're following the law.

**Juror**: See, I object to the fact that they had already made up their mind like this is what they were going to do before I came in, and they were – all of them were there except three of us and –

**The Court**: That's okay. You don't have to tell me what's going on in the jury room.

**Juror**: Okay.

**The Court**: Okay? As long as you're following the law.

**Juror**: (Nodding head).

**The Court**: Okay.

**Juror**: You know, they're telling me I don't know the law and –

**The Court**: Well, you have the instructions of law in front of you –

**Juror**: Sure. Sure.

**The Court**: -- and that's what you are to follow.

**Juror**: And I used to cover jury proceedings for – not in this court but in Youngstown Municipal Court for a couple years, my first couple years, at the Vindicator.

**The Court**: Okay.

**Juror**: They tell me I don't know the definition of complicity. Come on, you know. They're saying I'm not intelligent. I think I'm just as intelligent as they are.

**The Court**: I'm sure you are. Thank you.

**Juror**: Thank you.

(Tr. 492-96).

{¶11} The trial judge then informed the attorneys that the interview revealed that the juror was following the law but disagreed as to what the evidence showed. (Tr. 496).

{¶12} The trial court further stated:

Therefore, the Court's going to instruct the jury to continue with their deliberations. If they don't come to a verdict within an hour, I will then give them the Howard charge. (Tr. 496).

**{¶13}** Trial counsel for Appellant responded:

I'm going to move at this point to have this case declared as hung, the jury hung, and move the Court for a mistrial. They've already deliberated for in excess of ten hours. You got a note last week indicating that they're at a stalemate. I think any further deliberation or to force this jury to deliberate is now you're violating my client's right to have a hung jury, which is one of his constitutional rights based on a jury trial. (Tr. 497).

**{¶14}** The trial court advised the jury to continue their deliberations over the objection of trial counsel for Appellant, stating: "Ladies and gentlemen, since all twelve of you are now present in the jury room, I'm going to instruct you to continue with your deliberation, consider all the evidence anew, and do it with the goal of reaching a verdict if you can do so without surrendering your honest convictions." (Tr. 498).

**{¶15}** The jury returned to the courtroom at 11:35 a.m. on May 16, 2016 to render its verdict and found Appellant guilty on both counts as indicted but not guilty on the firearm specifications. The jurors were polled and all indicated that the verdict was accurate. (Tr. 499-502).

**{¶16}** At the sentencing hearing on July 18, 2016, trial counsel for Appellant requested an acquittal under Criminal Rule 29, or a new trial based upon the "peculiar deliberation of this particular jury." (Tr. 3). The trial court overruled both motions. (Tr. 4). The trial court merged both counts and sentenced Appellant to eight years in prison. This timely appeal followed.

**Mistrial/New Trial[1]**

**{¶17}**   Appellant's sole assignment of error asserts:

The trial court abused its discretion when it overruled Appellant's motions for a mistrial and for a new trial related to the jury deliberation irregularity.

**{¶18}** The decision to grant or deny a motion for a mistrial or new trial is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Merlin v. Ankle & Foot Care*, 7th Dist. No. 16 MA 0051, 2017-Ohio-4388, ¶7 (mistrial); *State v. Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182, ¶15 (7th Dist.) (new trial). An abuse of discretion means the trial court's decision is unreasonable based upon the record; that the appellate court may have reached a different result is not enough to warrant reversal. *Smith v. Smith*, 7th Dist. No. 14 CA 0901, 2016–Ohio–3223, ¶ 13. "The essential inquiry for both motions is whether the substantial rights of the accused are adversely or materially affected." *State v. Casto*, 9th Dist. No. 2976-M, 2000 WL 1288178 *9 (Sept. 13, 2000) citing *State v. Nichols*, 85 Ohio App.3d 65, 69, 619 N.E.2d 80, (4th Dist.1993) (mistrial); Crim.R. 33(A) (new trial). "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). However, a defendant may move for a new trial under Crim.R. 33(A) only upon a showing of one of six grounds. Appellant argues that the motion for new trial should have been granted due to the "irregularity in the trial court proceedings" and recites the language from Criminal Rule 33(A)(1). Criminal Rule 33(A) provides, in pertinent part:

(A) **Grounds.**  A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or

---

[1] In his brief Appellant seems to focus on the argument related to a motion for a new trial while the State focuses on a mistrial. Both will be discussed in turn. Also, Appellant's trial counsel requested an acquittal or new trial at the sentencing hearing.  There is no mention of the acquittal in Appellant's brief, which would have also been time-barred in accordance with Criminal Rule 29: **[**i]f a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal.

abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *.  Crim.R. 33(A)(1).

**{¶19}**  The motion for a new trial must also be timely. Crim.R. 33(B) provides:

**(B) Motion for New Trial; Form, Time.** Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

**{¶20}**  In the present matter, Appellant's verdict was rendered on May 16, 2016. Appellant made an oral motion for a new trial at his sentencing hearing on July 15, 2016, well outside of the fourteen-day time limit. Further, Appellant did not provide any evidence or argument that he was unavoidably prevented from filing his motion for a new trial within the fourteen-day deadline.  As Appellant did not comply with the time requirements of Crim.R. 33, his motion for a new trial was properly overruled.

**{¶21}**  With regard to the oral requests for mistrial during the jury deliberations, Appellant argues that the irregularity in the trial court proceedings related to the jury deliberations materially affected his right to a fair and impartial trial.  During jury deliberations, the trial court was informed through a note that the jury was "at a stalemate, as a juror refuses to follow the law as set before us."  (Tr. 487).  This prompted Appellant's first oral request for a mistrial, objecting to replacing the juror with an alternate, and stating that "anything but a mistrial at this point is objected to by the defense."  (Tr. 489).  The trial judge interviewed the juror over the objection of Appellant's trial counsel, outside the presence of counsel and the Appellant, but on the record.  (Tr. 492).  The trial judge determined the juror disagreed on the evidence, but was following the law and instructions.  The trial judge informed counsel of the outcome

of the juror interview, at which time Appellant's trial counsel again moved the court for a mistrial and to declare a hung jury. (Tr. 497). The trial judge advised the jury to continue their deliberations over the objection of Appellant's trial counsel. (Tr. 498). The trial judge stated to the jury: "I'm going to instruct you to continue with your deliberation, consider all the evidence anew, and do it with the goal of reaching a verdict if you can do so without surrendering your honest convictions." (Tr. 498). Shortly after the trial court's instructions to continue deliberations, the jury returned guilty verdicts on the robbery and aggravated robbery charges.

{¶22} While the events during the jury deliberations were not traditional, the facts of the case do not demonstrate that Appellant's right to a fair trial was adversely or materially affected by the trial court's interview. Upon being advised that one of the jurors refused to follow the law, the trial court was under a duty to investigate. *See State v. Miller,* 2d Dist. No. 18011, 2000 WL 1369918, *4 (stating when possible jury misconduct is brought to the attention of the trial judge, the court has a duty to investigate), citing *State v. Rudge,* 89 Ohio App.3d 429, 442, 624 N.E.2d 1069 (11thDist. 1993); *Cunningham v. St. Alexis Hosp. Med. Ctr.,* 143 Ohio App.3d 353, 377, 758 N.E.2d 188 (8thDist. 2001) (holding that the trial court abused its discretion where it did not conduct an inquiry of the particular juror accused of misconduct to determine whether the defendant would receive a fair trial). Jury misconduct can include a juror refusing to consider the evidence or forming an opinion as to guilt or innocence before all the evidence is presented. *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818 (4th Dist. 1991), citing *Carr v. State,* 22 Ohio App. 78, 153 N.E. 233 (1926); *Busick v. State,* 19 Ohio 198 (1850); *State v. Carter,* 11 Ohio Dec.Rep. 123 (1890).

{¶23} In *State v. Gunnell*, 2d Dist. No. 09-CA-0013, 2010-Ohio-4415, ¶ 173, the court acknowledged that any inquiry of a juror after deliberations have begun cannot be taken lightly and must only be undertaken after careful deliberation by the trial court and counsel. In that case, a juror returned after a break in deliberations with two notes regarding research she had conducted on the internet as to definitions in the case. *Id.* at ¶ 90. The trial judge conducted a *voir dire* examination of the juror in the presence of counsel and then questioned whether a curative instruction would alleviate the prejudice. *Id.* at ¶ 90, 118. The prosecution moved for a mistrial, which was opposed

by the defense. *Id.* at ¶ 142-143. The trial court concluded the juror had been irreparably tainted since one of the notes she brought in had a hypothetical example of involuntary manslaughter which did not comport with Ohio law and was very prejudicial to the State. *Id.* at ¶ 150. The court granted the requested mistrial, finding that it was a manifest necessity based upon the information that the juror had acquired. *Id.* at ¶ 154.

{¶24} On appeal, the court reversed the convictions, finding that the trial court failed to act rationally, responsibly, or deliberately when confronted with the juror's misconduct during the second trial. *Id.* at ¶ 201. Further, since the defendant's double jeopardy rights were violated by the trial court's improper declaration of a mistrial, it resulted in the release of the defendant who could not be retried on the charges. *Id.* The court cautioned that such consequences emphasize the need for careful consideration of alternatives to a mistrial in the first instance and the need to conduct an adequate investigation when confronted with juror misconduct. *Id.* The Ohio Supreme Court affirmed the decision, stating that the trial judge's inquiry of the subject juror was limited and ineffective, and did not unearth what bias, if any, the juror absorbed as a result of reading the forbidden material. *State v. Gunnell,* 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 32. The court stated that although it was error for the juror to conduct outside research, it was also error for the judge to make such a limited inquiry that merely established misconduct, not any prejudice as a result of the misconduct. *Id.* at ¶ 33. As a result, the record did not establish a manifest necessity to declare a mistrial, double jeopardy attached, and the judgment of the court of appeals barring retrial was affirmed. *Id.* at ¶ 40.

{¶25} In *State v. Pennington*, 2nd Dist. No. 24090, 2011-Ohio-4445, ¶ 31, the appellant argued that his counsel was ineffective for failing to request a mistrial after irregularities during jury deliberations came to light. In that case, a juror was crying and refusing to return to deliberations. *Id.* at ¶ 32. The trial judge consulted with the attorneys in the case and then interviewed the juror in chambers on the record but outside of counsel's presence. *Id.* The trial judge inquired of the juror's ability to continue as a juror, to which the juror responded she could continue*. Id.* Appellant was asked if he thought the juror should continue serving as a juror, and he stated that she should. *Id.* The jury returned a verdict and the jurors were polled and affirmed the

verdict. *Id.* The court cited the Ohio Supreme Court case of *State v. Hessler,* 90 Ohio St.3d 108, 120, 2000-Ohio-30, which found that a trial court's polling of the jury following a similar circumstance of an upset juror provided evidence that the juror's verdict was a product of her own free will. In *Hessler* Appellant argued that juror misconduct "infected the jury's deliberations and polluted its recommendation" and that the court erred by not holding a hearing in the presence of all interested parties to determine whether the jury was unfair and biased. *Id.* at 115.

{¶26} In *Hessler* the trial judge had been informed that a verdict had been reached, and prior to bringing the jury into the courtroom, was alerted of an upset juror crying in the hallway and commenting "I do not agree with any of the people in there" and "I can't handle the pressure." *Id.* at 116. The trial judge informed the attorneys about the distraught juror, and it was agreed that the judge should question the juror. *Id.* The judge's interview showed the judge trying to calm down the juror and remind her of the importance of the proceeding, and that she must be true to her vote and only answer for herself. *Id.* at 120. The juror repeatedly asked the judge what would happen if she didn't agree, commenting that everyone was yelling at her, and that "everyone will think I'm crazy." *Id.* at 117-119. Following the interview, the jury returned to the courtroom and announced its decision, and when individually polled, the juror stated that she agreed with the recommendations. *Id.* at 120. The court further held that if there was a chance the juror didn't agree with the sentences announced, she had the chance to say so during the individual jury polling. *Id.* at 121. As the court stated, "[a] jury poll's purpose is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Id.,* citing *Miranda v. United States* (C.A.1, 1958), 255 F.2d 9, 17. Crim.R. 31(D).

{¶27} In *State v. Green,* 67 Ohio App.3d 72, 78, 585 N.E.2d 990 (8th Dist.1990), the court held that it was not an abuse of discretion of the trial court to deny an oral motion for mistrial following the polling of the jury where one of the jurors indicated she did not agree with the guilty verdict. In that case, when one of the jurors revealed that

she did not agree with the unanimous verdict, the court immediately and without further instruction ordered the jury to retire for further deliberations. *Id.* at 75. Approximately forty-five minutes later, the jury returned with a unanimous verdict of guilty which was reflected in the second jury polling. *Id.* The court held that the appellant's right to a fair trial was not prejudiced in that case since the second jury polling revealed that the juror was in agreement with the verdict. *Id.* at 77-78.

**{¶28}** In the instant case, the juror in question was interviewed by the trial judge to determine if he was following the law. The jury resumed deliberations after the trial judge's interview, and a short time later returned a guilty verdict. The jury was thereafter polled and the entire jury affirmed the decision. This demonstrates that the subject juror was in agreement with the verdict. As such, Appellant's right to a fair trial was not prejudiced.

**{¶29}** In *State v. Zaragoza,* 2d Dist. No. 26706, 2016-Ohio-144 ¶ 1, there were allegations that a trial court had abused its discretion in replacing a juror during the defendant's second trial, and further that the trial court improperly interviewed the dismissed juror outside the presence of counsel. In *Zaragoza,* one of the jurors had become agitated during the first day of deliberations, and there were complaints to the court's bailiff that the juror had been verbally abusive to other jury members, and the bailiff had observed four of the jurors crying, including the foreperson. *Id.* at ¶ 4. The trial court contacted the jury foreperson to inquire about the complaints and also had the bailiff contact an alternate juror in the event a replacement juror would be needed, advised counsel of the situation, and had the foreperson and bailiff explain the situation on the record. *Id.* The court stated its intent to interview the juror on the record without counsel present before determining whether to remove the juror from the jury. *Id.* at ¶ 9. Counsel for the defendant objected to the interview without counsel present, and further to the removal of the juror from the jury. *Id.* The court proceeded with a private interview of the juror over the objection of defense counsel. *Id.*

**{¶30}** Following the interview, the court dismissed the juror, concluding that he was unstable, disruptive of deliberations, and a safety threat to the female jurors. *Id.* at ¶ 11. The court interviewed the alternate juror in the presence of counsel and replaced the juror with the alternate, noting defense counsel's continuing objection. *Id.* The jury

Case No. 16 MA 0119

restarted deliberations and later sent a note to the court that it could not reach a unanimous verdict. *Id.* at ¶ 12-13. The trial court requested whether, if given more time, it was possible to reach an agreement, to which the jury concluded it could not. *Id.* at ¶ 13. As such, the court declared a mistrial. *Id.* at ¶ 13. Zaragoza argued that the trial court's decision to replace the juror prejudiced him. *Id.* at ¶ 17. The court disagreed, finding that the trial court did not abuse its discretion in removing the juror from the jury. *Id.* at ¶ 23. The court stated that the defendant did not demonstrate that the outcome of his trial would have been different had the juror not been replaced. *Id.* at ¶ 26. The court further found no merit in Zaragoza's argument that the trial court improperly interviewed the juror without him or his counsel present, depriving him of the right to be present during all proceedings. *Id.* at ¶ 29.

{¶31} The *Zaragoza* court noted that "[t]he Supreme Court has made clear * * * that erroneous communications between the judge and jury constitute good cause for a new trial only if the communications prejudiced the defendant's right to a fair trial. *Id.* at ¶ 32, citing *State v. Manns,* 169 Ohio App.3d 687, 2006-Ohio-5802, 864 N.E.2d 657, (2d Dist.) ¶ 75. The court noted that there must have been a communication that was substantive in nature and in some way prejudicial to the party complaining. *Id.* at ¶ 32, citing *State v. Schiebel,* 55 Ohio St.3d 71, 84, 564 N.E.2d 54 (1990). The court determined that the juror interview only concerned the juror's behavior and did not discuss any legal issues, facts in controversy, applicable law, or other similar matter. *Id.* at ¶ 37. As such, the court stated the communication was non-substantive, and any error in conducting the interview in private was, at worst, harmless. *Id.* The court concluded that the communications at issue in the case were non-substantive and Zaragoza failed to demonstrate that the communications prevented him from receiving a fair trial. *Id.* at ¶ 40.

{¶32} Here, the trial judge interviewed the juror outside the presence of counsel, but on the record. The trial judge did not discuss legal issues, facts in controversy, or applicable law, but rather sought confirmation that the juror was following the law based upon the allegations stating otherwise. Appellant's trial counsel had previously stated that Appellant objected to anything but a mistrial once the trial judge received the note stating that the jury was at a stalemate. (Tr. 489). Appellant's

counsel was aware of the juror interview, and was informed by the trial judge that the juror disagreed on some of the evidence, but the juror was following the law. (Tr. 496). Appellant's trial counsel again requested a mistrial, and the trial judge instructed the jury to continue deliberations over the objection of Appellant. (Tr. 498). It was necessary for the trial judge to interview the juror to eliminate the possibility of any juror misconduct which could have prejudiced Appellant's right to a fair and impartial jury. The trial judge's interview was non-substantive in nature, and Appellant has failed to demonstrate that the interview with the juror prevented him from receiving a fair trial. Appellant's objection to the interview could prohibit the judge from investigating all possible alternatives to declaring a mistrial. If the trial court failed to investigate the alleged misconduct of one of the jurors, and opted to declare a mistrial, it could have resulted in the improper granting of a mistrial, and a possible double jeopardy argument.

{¶33} We also considered whether the trial judge's interview with the holdout juror can be viewed as coercive, and if so, if the interview prejudiced Appellant's substantial right to a fair and impartial jury. In the case of *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), the Ohio Supreme Court held that the former *Allen* charge was not a proper supplemental charge to be given to juries which have become deadlocked and an approved instruction was adopted to replace it, known as the *Howard* charge. In that case, the facts involved the trial court issuing supplemental jury charges, first when the jury informed the court it was unable to reach a unanimous verdict late in the first day of deliberations, and then two days later when the jury indicated they could not reach a unanimous verdict on the aggravated murder charge. *Id.* at 19. The trial judge informed counsel of the intent to give a charge that was short of the *Allen* charge, but would do a little bit more than encourage the jury to decide the case. *Id.* Trial counsel for the defendant in that case objected to the supplemental instruction. *Id.* Following the supplemental charge, the jury returned with a verdict of guilty less than an hour later. *Id.* at 20.

{¶34} The conviction was affirmed on appeal, and then a petition for postconviction relief was filed, claiming ineffective assistance of counsel. *Id.* The trial court dismissed the petition. On appeal, the court held that the supplemental instruction given by the trial judge so coerced and infected the process of jury deliberation so

jealously revered in the law, that it constituted prejudicial error affecting [appellee's] substantial rights to a fair and impartial jury and could not be allowed to stand. *Id.* The appellate court held that counsel's failure to raise the issue on direct appeal constituted ineffective assistance of counsel and reversed the conviction and remanded for a new trial. *Id.*

**{¶35}** The *Howard* Court focused on whether the supplemental jury instruction given to the jury was coercive in the sense that it pressured members of the jury who were in the minority to abandon their positions. *Id.* at 21. The Court noted that many jurisdictions had rejected the *Allen* charge because it lacked balance and was directed to minority jurors only and was potentially coercive upon them to agree with those jurors constituting the majority. *Id.* at 23. The Court further noted that "[c]ertainly the facts of this case, where only one hour after the *Allen* charge was given, a unanimous verdict was reached when nearly two and one-half days of deliberation had failed to produce agreement, raise at least the inference of coercion affecting appellee's substantial right to a fair and impartial jury." *Id.* The *Howard* Court remanded the case to the trial court for a new trial, and formulated an instruction that encouraged a verdict where one can conscientiously be reached, that was balanced, asking all jurors to reconsider their opinions in light of the fact that others do not agree. *Id.* at 25.

**{¶36}** Here, the trial judge interviewed the sole "holdout" juror following two communications that had been provided to the court: one that indicated a juror would not follow the jury instructions, and a second that stated that the jurors were at a stalemate. During the interview of the juror, the trial judge told the juror "I'm going to instruct the jury to go back and continue their deliberations. * * * I'm going to tell them to do so with an open mind and reconsider all the evidence, okay? And I want you to do the same thing, but I'm going to put that on the record with the jury." (Tr. 494). A short time later, the jury returned with guilty verdicts on the aggravated robbery and robbery charges. The jury was polled, and all jurors confirmed the unanimous verdict. As the court demonstrated in *Green, supra,* appellant's right to a fair trial was not prejudiced since the jury polling revealed that the juror was in agreement with the verdict.

**{¶37}** Based upon the foregoing analysis, the trial court did not abuse its discretion by overruling Appellant's motion for a mistrial and the motion for a new trial.

Appellant's sole assignment of error is without merit and the judgment of the trial court is affirmed.

**Donofrio, J., concurs.**
**Waite, J., concurs.**

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs are waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**